

Dated: August 27th, 2021

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| IN RE: | CASE NO. 2:01-bk-21157 |
|---|---|
| GLEN ERVIN RATLIFF and MARSHA KAY RATLIFF, | CHAPTER 7 |
| Debtors. | JUDGE B. MCKAY MIGNAULT |
| GLEN ERVIN RATLIFF and MARSHA KAY RATLIFF, | ADVERSARY PROCEEDING NO. 2:19-ap-02016 |
| Plaintiffs, | |
| v. | |
| THE UNITED STATES DEPARTMENT OF EDUCATION and THE UNIVERSITY OF CHARLESTON, INC. | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Pending are two matters: (1) the United States Department of Education's Motion to Dismiss (the "MTD") [dckt. 9]; and (2) the Ratliffs' Motion for Default Judgment against the University of Charleston (the "MDJ") [dckt. 18]. Briefing has been completed in both matters and both are ripe for adjudication.

I.

A. **Facts and Arguments**

Marsha Kay Ratliff received student loans from 1995 to 1999 in the total amount of $47,992. She and her husband Glen Irvin Ratliff filed their Chapter 7 case on May 4, 2001. In

their schedules, they listed the University of Charleston ("UOC") and Sallie Mae as unsecured creditors. The Chapter 7 Trustee filed his Report of No Distribution on June 11, 2001, the Ratliffs received their discharge on August 22, 2001, and the case was closed on October 9, 2001.

On February 11, 2002, the Ratliffs moved to reopen their bankruptcy case for the purpose of filing an adversary complaint against Sallie Mae Servicing to determine the dischargeability of their student loans. Their case was reopened and the adversary proceeding was filed (No. 2:02-ap-00027). During the pendency of the adversary proceeding, Ms. Ratliff submitted an administrative application to the Department of Education ("DOE") asking that her student loans be discharged due to disability. On February 7, 2003, the DOE confirmed that Ms. Ratliffs' application was approved and that her student loans had been administratively discharged. However, along with that discharge came continuing requirements; Ms. Ratliff had to disclose her income to the DOE for a period of three years following the discharge.

Ultimately, the Court entered an agreed order dismissing the 2002 adversary proceeding (the "Agreed Order"). The Agreed Order simply stated that the parties "stipulate that the Ratliffs' student loans have previously been administratively discharged on the basis of total and permanent disability." No further discussion of applicable law was undertaken. The adversary proceeding was dismissed as moot and the Ratliffs' case was closed again on January 26, 2005.

On November 20, 2019, the Ratliffs again moved to reopen their case. They wished to file an adversary complaint against parties who had been attempting to collect what they termed their "discharged student loan debt." The case was reopened, and the above-captioned adversary proceeding was filed on December 16, 2019.

The Ratliffs alleged in their complaint that the DOE employed NCO Financial Systems, Inc. ("NCO") as a debt collection agency to collect on one of the Ratliffs' discharged

student loans. The Ratliffs further asserted that the UOC was also continuing its efforts to collect on the discharged student loan. The Ratliffs argued that the student loan in question was discharged pursuant to the agreed order dismissing the 2002 adversary proceeding (the "2002 Order"), which stated that the loan was discharged due to permanent physical disability.

Specifically, the DOE initiated federal tax return offsets and intercepted the Ratliffs' 2007 tax return refund in the amount of $683, their 2013 tax return refund in the amount of $4,593, their 2014 tax return refund in the amount of $899, and their 2015 tax return refund in the amount of $2,405. The total amount intercepted is $8,580. The Ratliffs argue that these collection efforts were undertaken in contempt of the Agreed Order and are a violation of the Ratliffs' discharge (although no Bankruptcy Code section is listed in the Complaint, the Court will assume that the Ratliffs refer to the discharge injunction contained in § 524).

The Ratliffs also argue that the UOC has been contacting them in an effort to collect the discharged student loan debt. They assert that each attempt to collect the debt is a separate violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA") and is an action taken in contempt of the 2002 Order. In all, the Ratliffs request an award of damages under the WVCCPA, return of the $8,580 collected via tax return offsets, and further relief as deemed appropriate by this Court.

In its MTD, the DOE alleges that the administrative discharge based on total and permanent disability issued in February, 2003, was cancelled due to Ms. Ratliffs' noncompliance with the requirement that she disclose her income for the three following years. Although not reported in her filings, Ms. Ratliff re-applied to the DOE for total and permanent disability discharge of her student loans on March 18, 2018. Her 2018 application was approved on July 26,

2019. She must comply with the same requirement;[1] she must disclose her income for three years following her discharge.

The DOE puts forth several arguments. The first is that this action is premature because the Ratliffs have not exhausted their administrative remedies prior to seeking judicial review as required by applicable caselaw. The second, similarly, is that this Court does not have jurisdiction over this matter pursuant to the doctrine of sovereign immunity and because the remaining claims sound in West Virginia state law (the WVCCPA).

With regards to the UOC, the Ratliffs received a Clerk's Entry of Default on October 6, 2020 and thereafter filed the MDJ. The UOC has not responded to any filing in this adversary proceeding.

## II.

### A.    Applicable Law

#### 1.    The Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), made applicable to this proceeding by Federal Rule of Bankruptcy procedure 7012, a party may request dismissal of an adversary proceeding based on "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). With regards to that rule, "the court should grant the Rule 12(b)(1) motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Lockhart v. Jackson (In re Lockhart,)* A.P. No. 1:20-ap-38, 2021 WL 2632765, at *1 (Bankr. N.D. W. Va. June 24, 2021) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted)).

---

[1] Ms. Ratliff's Application Approval from the DOE stated: "[y]ou are subject to a monitoring period that will end three years from 05/06/2019."

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled on other grounds, *Twombly*, 550 U.S. at 562-63); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 558. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Wright v. N. Carolina*, 787 F.3d 256, 270 (4th Cir. 2015); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal quotation marks and citation omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. It follows that "[c]onclusory statements and facts 'merely consistent with a defendant's liability' do not suffice to carry a complaint over 'the line between possibility and plausibility.'" *Fairfax v. CBS*

*Corp.*, 2 F.4th 286, 291-92 (4th Cir. June 23, 2021) (quoting *Iqbal*, 556 U.S. at 678); *see also Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009).

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "'accept as true all of the factual allegations contained in the complaint . . . .'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555); *see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir.

2002)). The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

To adjudicate a dispute, this Court must have jurisdiction over the matter. The United States and its agencies, including the Department of Education, are immune from suit, and courts have no jurisdiction to consider suits against the United States except where expressly stated by Congress. *U.S. V. Sherwood*, 312 U.S. 584, 587-88 (1941). The only waiver of this sovereign immunity for tort actions is contained in the Federal Tort Claims Act (the "FTCA"). *See Loeffler v. Frank*, 486 U.S. 549, 562 (1988). For actions under the FTCA, "[i]t is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant," and, "a suit against the United States under the FTCA is the exclusive remedy for tort claims arising from the actions of governmental agencies or employees." *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988). Furthermore, "courts have consistently held that an agency or government employee cannot be sued *eo nominee* under the Federal Tort Claims Act," and, "[t]hus, an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction." *Galvin*, 860 F.2d at 183; *see also in re Ginn*, 128 B.R. 719 (Bankr. D.S.C. 1990).

Notwithstanding the discussion above, Congress has declared, via 11 U.S.C. § 106(a), that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Section[] . . . 524 . . . (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units." 11 U.S.C. § 106(a)(1) – (2); *see also In re Reed*, 616 B.R. 77, 81 (Bankr. N.D. Miss. 2020). This abrogation expressly extends to suits under § 524. *See, e.g. In re Lowthorp*, 332 B.R. 656, 659 (Bankr. M.D. Fla. 2005). There has been some consternation about whether the abrogation of

sovereign immunity when it comes to whether state sovereign immunity under § 106 is constitutional, but that consternation does not appear to have spread to abrogation of sovereign immunity for a federal governmental agency such as the DOE or IRS. *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.)*, 119 F.3d 1140, 1146-47 (4th Cir. 1997); *Levin v. New York Dept. of Health (In re Levin)*, 284 B.R. 308, 311 (Bankr. S.D. Fla. 2002); *Venable v. Acosta (In re Venable)*, 280 B.R. 916, 918-21 (Bankr. M.D. Fla. 2002). In fact, this court's esteemed sister court in the north recently decided *In re Lockhart* and, the process, dealt with a § 106(a) argument made by the Internal Revenue Service. *In re Lockhart*, A.P. No. 1:20-ap-38, 2021 WL 2632765 (Bankr. N.D. W. Va. June 24, 2021). Judge Bissett stated, in regard to an action against the IRS based on § 362, that "it is clear Congress abrogated sovereign immunity . . ." and, "[t]he court may hear and determine *any* issue arising with respect to the application of such sections to governmental units." *Lockhart*, 2021 WL 2632765, at *4.

With regard to subject matter jurisdiction, "like all federal courts, bankruptcy courts have limited jurisdiction." *Houck v. Lifestore Bank Substitute Trustee Servs., Inc.*, 582 B.R. 138, 140 (Bankr. W.D.N.C. 2018) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). Unsurprisingly, bankruptcy courts' jurisdiction is limited to bankruptcy matters. *Houck*, 582 B.R. at 150. Essentially, there are three types of proceedings over which bankruptcy courts have jurisdiction: those "arising under," "arising in," and "related to" cases under Title 11. *Houck*, 582 B.R. at 151. Matters "arising under" Title 11 involve causes of action created by the Bankruptcy Code, while matters "arising in" are "not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Houck*, 582 B.R. at 151 (quoting *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662 (1st Cir. 2017) and *Bergstrom v. Dalkon Shield Claimants Tr. (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996)). The third

category, or those matters "related to," is broad, but not unlimited. *Houck*, 582 B.R. at 152 (citing *Celotex*, 514 U.S. at 307-09). The Fourth Circuit employs the *Pacor* test in determining whether a *pre-confirmation* matter is sufficiently "related to" a bankruptcy case such that bankruptcy court jurisdiction is appropriate. *Houck*, 582 B.R. at 151-52. The *Pacor* test examines "whether the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Houck*, 582 B.R. at 152 (quoting *Pacor v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3d Cir. 1984)). Practically, this means that the proceeding in question "need not be against the debtor, because an action is 'related to' in bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and in which any way impacts upon the handling and administration of the bankrupt estate." *Houck*, 582 B.R. at 152 (quoting *Pacor*, 743 F.2d at 994) (internal quotation marks omitted)). Simply stated, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Houck*, 582 B.R. at 152 (quoting *Celotex*, 514 U.S. at 309 n.6).

Following the Third Circuit again, the Fourth Circuit has approved of the "close nexus" test for evaluating whether *post-confirmation* proceedings qualify for bankruptcy jurisdiction under the "related to" prong. *Houck*, 582 B.R. at 155 (citing *Valley Historic Ltd. Partnership v. Bank of New York*, 486 F.3d 831, 836-38 (4th Cir. 2007)). The "clear nexus" test "requires a claim to affect an integral aspect of the bankruptcy process in order for a bankruptcy court to have jurisdiction post-confirmation." *Houck*, 582 B.R. at 155 (quoting *Valley Historic*, 486 F.3d at 836) (internal quotation marks omitted). The "close nexus" test "insures that the proceeding serves a bankruptcy administration purpose on the date the bankruptcy court exercises that jurisdiction." *Houck*, 582 B.R. at 155 (quoting *Valley Historic*, 486 F.3d at 837).

Bankruptcy courts generally only enjoy supplemental, or "related to," jurisdiction over state law claims. *Houck*, 582 B.R. at 140. State law causes of action "are not explicitly created by the Bankruptcy Code, so they are not 'arising under' claims," nor are they dependent upon the bankruptcy case, so they are also not "arising in" claims. *Houck*, 582 B.R. at 154. Thus, state law claims can only be adjudicated by bankruptcy courts if they are "related to" a bankruptcy case. *Houck*, 582 B.R. at 154. Usually, bankruptcy courts have jurisdiction over pre-petition state law claims, as they often become property of the estate, or because prosecution of the claims could have an effect on the bankruptcy estate. *Houck*, 582 B.R. at 155 (citing *Davis v. C.G. Courington (In re Davis)*, 177 B.R. 907, 912 (9th Cir. B.A.P. 1995)). Once a bankruptcy case is over, "the basis for 'related to' jurisdiction becomes more attenuated at best." *Houck*, 582 B.R. at 155.

Generally, "all legal obligations of the debtor, no matter how remote or contingent, are potentially dischargeable in bankruptcy." *In re Randall*, 628 B.R. 772, 777 (Bankr. D. Md. 2021) (quoting *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (internal quotation marks omitted)). But, "the bankruptcy discharge is not, however, absolute." *Randall*, 628 B.R. at 777. Certain types of debts are not dischargeable in bankruptcy; meaning, the debtor remains personally liable for those debts post-discharge. Included in the list of nondischargeable debts is student loans. 11 U.S.C. § 523(a)(8). Specifically, the Bankruptcy Code states that debts considered

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

are nondischargeable unless they impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8). Because "debtors receive valuable benefits from congressionally authorized loans,[] Congress in turn requires loan recipients to repay them in all but the most dire circumstances." *Spence v. Educ. Credit Mgmt. Corp. (In re Spence),* 541 F.3d 538, 543-44 (4th Cir. 2008) (quoting *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 399 (4th Cir. 2005)). The result is, "if a debtor takes no action during her bankruptcy case, her student loan debt flows through the case and remains enforceable against her." *Randall*, 628 B.R. at 780. Absent an adversary proceeding, "[s]ection 523(a)(8) is self-activating," and, thus, "an educational loan can be nondischargeable without a judicial determination of nondischargeability during the bankruptcy case." *In re McKinnie*, 501 B.R. 344, 346 (Bankr. E.D. Mich. 2013) (quoting *Stone v. Vanderbilt University*, 180 B.R. 499, 501 (Bankr. M.D. Tenn. 1995)). During her case, though, a debtor may commence an adversary proceeding challenging the nondischargeability of her debt. *Randall*, 628 B.R. at 780

To counter the nondischargeability of a student loan debt, a debtor bears the burden of proving by a preponderance of the evidence that the debt imposes an undue hardship on the debtor and the debtor's dependents. *Randall*, 628 B.R. at 780; *Spence*, 541 F.3d at 543. There is no definition for "undue hardship" in the Code, so most courts, including those in the Fourth Circuit, have adopted the *Brunner* test articulated by the Second Circuit in *Brunner v. N.Y. Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987). *Randall*, 628 B.R. at 780. Under the *Brunner* test, a debtor must fulfill all three elements:

> (1) they cannot maintain, based on current income and expenses, a "minimal" standard of living for themselves and their dependents if forced to repay the loans;
> (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for the student loans; and

(3) they have made good faith efforts to repay the loans.

*Randall*, 628 B.R. at 780. Importantly, "[c]ourts stringently enforce the student loan debt exception to discharge and have set a high bar for debtors trying to discharge their student loan debt." *Randall*, 628 B.R. at 780. The Fourth Circuit has explained that the "heightened standard protects the integrity of the student-loan program and saves it from fiscal doom." *Frushour*, 433 F.3d at 400 (quoting *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish )*, 72 F.3d 298, 306 (3d Cir.1995)) (internal quotation marks omitted).

Outside of the Bankruptcy Code, a debtor may opt to seek an administrative discharge under the Federal Family Education Loan Program ("FFELP"). *In re Lagueux*, 604 B.R. 249, 251 (Bankr. D.S.C. 2019). Under the FFELP, an administrative discharge may be granted for total and permanent disability. *Lagueux,* 604 B.R. at 251. This administrative discharge is "separate and distinct" from the discharge provided by Congress in the Bankruptcy Code under § 523(a)(8), and only the Secretary of Education has discretion to administratively discharge a loan. *Lagueux*, 604 B.R. at 251; *U.S. v. Wright*, 87 F.Supp.2d 464, 466 (D. Md. 2000). In other words, "[a] student debtor's compliance with [the FFELP discharge] regulation and his entitlement to an administrative discharge does not equate with the debtor's right to receive an educational loan discharge in bankruptcy." *Cagle v. Educ. Credit Mgmt. Corp. (In re Cagle)*, 462 B.R. 829, 831-32 (Bankr. D. Kan. 2011).

The total and permanent disability discharge under the FFELP provides:

If a student borrower who has received a loan described in subparagraph (A) or (B) of section 1078(a)(1) of this title dies or becomes permanently and totally disabled (as determined in accordance with regulations of the Secretary), or if a student borrower who has received such a loan is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in

>death, has lasted for a continuous period of not less than 60 months, or can be expected to last for a continuous period of not less than 60 months then the Secretary shall discharge the borrower's liability on the loan by repaying the amount owed on the loan.

20 U.S.C. § 1087(a)(1). However, an individual applying for an administrative discharge for total and permanent disability is subject to automatic income monitoring. 20 U.S.C. § 1087(a)(3); *see also Dorsey v. U.S. Dept. of Educ.*, 528 B.R. 137, 145 (E.D. La. 2015) ("[A]n administrative discharge for total and permanent disability under the FFELP is only a conditional discharge, meaning a debtor must meet continuing requirements before he is eligible for permanent discharge at the end of a three-year monitoring period.").

In terms of jurisdiction, debtors who pursue a FFELP discharge "do not have a private right of action under 20 U.S.C. § 1087 in bankruptcy . . . ." *Cagle*, 462 B.R. at 831. The "plain language" of § 1087 "gives the borrower a course of action against the Secretary of Education for a discharge of her loan." *In re Bega*, 180 B.R. 642, 643 (Bankr. D. Kan. 1995). Specifically, " § 1087 is an exclusive administrative remedy [and] [t]he case law is clear that no private cause of action is created under 20 U.S.C. § 1807(c) whereby a bankruptcy court can determine whether a debt is discharged under that provision." *Barton v. Educ. Credit Mgmt. Corp. v. Barton (In re Barton)*, 266 B.R. 922, 924 (Bankr. S.D. Ga. 2001).

Collection activities that occur after a debtor receives a discharge in bankruptcy run afoul of the discharge injunction codified in 11 U.S.C. § 524. Specifically, § 524(a)(2) states that the bankruptcy discharge "operates as an injunction against the commencement or continuation of an action . . . or an act, to collect, recover, or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). Creditors cannot take action to recover a discharged debt. *In re Hazelton*, 622 B.R. 354, 359 (Bankr. W.D. Wis. 2020). If creditors do attempt to collect, debtors

may petition the bankruptcy court to hold them in civil contempt. *Hazelton*, 622 B.R. at 360. However, creditors may continue to collect, post-discharge, on debts that are deemed nondischargeable by the Bankruptcy Code, including student loans that are not discharged pursuant to the *Brunner* "undue hardship" test. *See McKinnie*, 501 B.R. at 346 ("[T]he discharge granted to [the debtor] under 11 U.S.C. § 727(a) in this case did *not* discharge any educational loan debt. It follows that any collection actions that have been taken to date on any such educational loan debt were *not* a violation of the discharge injunction under 11 U.S.C. § 524(a)(2).") (emphasis in original).

### 2. The Motion for Default Judgment

Default judgment is governed in bankruptcy by Bankruptcy Rule 7055, which incorporates Rule 55 of the Federal Rules of Civil Procedure. In most cases, a "party must apply to the court for a default judgment" once the Clerk of Court has entered the opposing party's default on the docket. Fed. R. Civ. P. 55(a) – (b). A default occurs when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a).

The inquiry does not end, though, at whether the opposing party has defaulted. Crucially, "the fact that the litigant sued did not respond does not vitiate the court's responsibility to do justice," and "[t]he integrity of the court's application must appear in every writing, whether the case be contested or default." *American Cyanamid Co. v. Page*, 66 F.R.D. 143, 145 (D.S.C. 1975). In cases where a default has occurred, a "court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in [the] action." *Ryan v. Homecomings Financial Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Nishimatsu Const. Co., Ltd. V.*

*Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."); *Board of Trustees, NECA-IBEW 756 Pension Fund v. Stirling & Associates of Flagler, Inc.*, No. 3:13-cv-878-J-32MCR, 2014 WL 116639 (M.D. Fla. Jan. 13, 2014) ("While all well-pleaded allegations of fact are deemed admitted upon entry of default, before entering a default judgment the Court must ensure that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted.").

B.   Analysis

    1.   **The Motion to Dismiss**

Initially, this Court will dispense with the DOE's contention that dismissal is appropriate for lack of subject matter jurisdiction based on sovereign immunity. Bankruptcy Code Section 106(a) clearly abrogates that immunity in this specific situation: the Ratliffs accuse the DOE of violating the discharge injunction (contained in § 524), which is listed in § 106(a) as a basis for abrogation of sovereign immunity against a governmental unit. Therefore, this Court will not grant the DOE's MTD based on lack of subject matter jurisdiction as enumerated in Rule 12(b)(1).

However, the Complaint may be dismissed based upon application of Rule 12(b)(6). This Court looks to the basics and simply asks, have the Ratliffs stated facts which would be sufficient to establish the elements of their discharge injunction claim, or have they simply made conclusory statements that do not suffice to raise the Complaint over the line between possibility and plausibility? They have not.

The facts pertinent to this Court's determination are as follows: (1) the Ratliffs filed their bankruptcy case, and included in their obligations was the instant student loan debt; (2) the Ratliffs received a discharge in August, 2001; (3) when they reopened their case in 2002, the Ratliffs initiated an adversary proceeding to determine the nondischargeability of the student loan debt; (4) Ms. Ratliff applied for an administrative discharge of her student loan debt based on disability, which was approved by the Department of Education; (5) following that approval, the Ratliffs entered into the Agreed Order, which settled the nondischargeability adversary proceeding by stating that the student loan debt was administratively discharged; (6) there is no mention anywhere in the Agreed Order of any determination that the student loan debt was deemed dischargeable under § 523(a)(8) and the *Brunner* undue hardship test, nor is there any consideration of the remarkably high standard for a bankruptcy discharge of the student loan; (7) Ms. Ratliff defaulted in her obligations under the administrative discharge and the discharge was revoked; (8) the DOE and UOC implemented collection actions against the Ratliffs based on the student loan debt; (9) Ms. Ratliff again applied for an administrative discharge in 2018, which was approved in April, 2019; and, finally, (10) the Ratliffs motioned to reopen their case to initiate the instant adversary proceeding in November, 2019. None of these facts are in dispute.

The timeline of certain facts is important as well. Ms. Ratliff was approved for her initial administrative discharge on February 7, 2003. She was required to submit income information for three years following that date. She did not do so. Neither party provided the date that Ms. Ratliff's discharge was revoked, but this Court can only assume it was on or before the end of 2007. The DOE and UOC did not cause any of the Ratliffs' tax returns to be offset until the Ratliffs were entitled to a tax refund for the year ending 2007. All of the other offsets occurred after that time. The collection letters from the DOE and UOC re-started in 2011, which was many

years after the discharge revocation. It is clear to this Court that the DOE and UOC did not reinstate collection efforts until after the administrative discharge was revoked. Therefore, there was no possible violation of the administrative discharge. And the facts outlined by the Ratliffs in their Complaint absolutely do not show any entitlement to relief on that basis.

Similarly, there is no question about whether the Ratliffs' student debt was discharged under the Bankruptcy Code: it was not. The Agreed Order simply moots the § 523(a)(8) dischargeability determination because of the administrative discharge. According to the Bankruptcy Code, the Ratliffs remained obligated on the student loan debt post-discharge. Even viewing all of the facts alleged in the Complaint as favorably as possible to the Ratliffs, it is abundantly clear that their allegations that the DOE and UOC violated the discharge injunction are simply implausible and the facts are not sufficient to establish the necessary elements. Thus, this Court will dismiss the portions of the Complaint alleging violation of the discharge injunction.

With the dismissal of the Ratliffs claims under the Bankruptcy Code, this Court must now evaluate whether it has jurisdiction over their remaining allegations under the WVCCPA. These claims are solely state law claims. If the Court had retained the bankruptcy matters, supplemental jurisdiction, or "related to" jurisdiction might extend to the WVCCPA issues. However, with the § 524 allegations extinguished, all that remains are state law claims that do not have an effect on the bankruptcy estate. Using both the *Pacor* and "close nexus" tests, bankruptcy jurisdiction over the WVCCPA claims cannot exist. The determination of whether the DOE or UOC violated the WVCCPA has no effect whatsoever on the Ratliffs' bankruptcy estate; their Chapter 7 case was initially discharged and closed in 2001. The estate was administered by the Trustee, who filed a Report of No Distribution. The issues that remain in controversy under the WVCCPA pertain solely to post-petition collection actions, and the outcome of those issues

will have no effect on the administration of the estate. Furthermore, the WVCCPA claims will not affect an integral aspect of the bankruptcy process, nor will they have any effect on the bankruptcy administration purpose as required by the "close nexus" test. Therefore, the Court will dismiss the Complaint as to the remaining claims which sound in state law under the WVCCPA. The Court simply does not have jurisdiction over these matters.

2.   **The Motion for Default Judgment**

As made clear above, with regards to the MDJ, the Court's inquiry does not end with the question of whether the UOC has defaulted in the above-captioned adversary proceeding. Yes, it is abundantly clear that the UOC has failed to plead or otherwise defend the action. However, it is also abundantly clear that, for the reasons stated previously, the Ratliffs have not articulated facts sufficient to survive a Rule 12(b)(6) motion to dismiss. This Court still has the responsibility to do justice and must determine, according to the Fourth Circuit, whether the well-pleaded allegations in the Complaint support the relief sought in the action. For the reasons stated previously, this Court finds that the allegations do not support the relief sought by the Ratliffs. Therefore, this Court must deny the Ratliffs' Motion for Default Judgment.

**III.**

The Ratliffs contend that the DOE and UOC have violated the discharge injunction (which the Court evaluated, regardless of their failure to articulate a Code section in the pleadings), that they have violated the WVCCPA, and that they are entitled to damages for those violations. Review of the Complaint illustrates that the Ratliffs have failed to state a claim

upon which relief can be granted under the Bankruptcy Code, and they have failed to show that the Court retains supplemental jurisdiction over the state law claims. Furthermore, regardless of the UOC's default, the Ratliffs are not entitle to judgment against the UOC. Accordingly,

**IT IS ORDERED** that the Department of Education's Motion to Dismiss be, and is hereby, **GRANTED.**

**IT IS FURTHER ORDERED** that the Ratliffs' Motion for Default Judgment be, and is hereby, **DENIED.**